**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LISA M. JACKSON,**

       **Plaintiff,**         **CIVIL ACTION NO. 10-cv-10874**

   **vs.**

                           **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket nos. 13, 18) be DENIED, Defendant's Motion For Summary Judgment (docket no. 15) be GRANTED and the instant Complaint dismissed.

***

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income on November 27, 2006 alleging that she had been disabled since January 1, 2005 due to depression, anxiety, attention deficit hyperactivity disorder (ADHD), back problems, seizures and asthma. (TR 105-08, 111-12, 143). The Social Security Administration denied benefits. (TR 65-82). Administrative Law Judge Paul R. Armstrong (ALJ) held a de novo video hearing on May 6, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time from January 1, 2005 through the date of the ALJ's June 26, 2008 decision. (TR 50-61). The Appeals Council declined

to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.     TESTIMONY AND RECORD EVIDENCE

Plaintiff was 21 years old on the alleged onset date. (TR 59). Plaintiff has an eleventh grade education. (TR 36-37). Plaintiff testified that at school she had special education for "everything." (TR 37). At the hearing Plaintiff testified that she had been working part-time at McDonald's for about two months, taking orders at the drive-through and the counter. (TR 12-13). Plaintiff testified that she cannot work more than fifteen hours per week due to back pain and she cannot work a forty-hour week due to back pain, anxiety, and getting "very stressed out very fast" and upset. (TR 18). Plaintiff also testified that she cannot continue to work due to her and her daughter's numerous appointments. (TR 19). Plaintiff estimated that she has been fired from approximately twenty-five percent of her jobs, generally for arguing and not being able to get along with her co-workers. (TR 25, 27). Plaintiff also testified that, as an adult, she has hit people including a neighbor, her mother and her boyfriend and she has hit her boyfriend in front of her children more times than she can count. (TR 30, 34).

Plaintiff had a past suicide attempt at age 14 or 15. (TR 17). Plaintiff testified that she was using "16 pills" on her twenty-first birthday. (TR 17). Plaintiff has undergone mental health treatment including medication. (TR 17). The ALJ pointed out Plaintiff's historical documentation of fibromyalgia, noting that it was "mostly" back pain and Plaintiff denied having problems with her hands, legs and knees. (TR 20). Plaintiff testified that the last time she had a seizure was three years prior to the hearing and at the time of the hearing she was not taking seizure medication. (TR 34).

Plaintiff also testified that she takes care of her three children, including a special needs child and a five month old. (TR 12-13). Plaintiff attends IEP meetings for her three-year-old. (TR 14). Plaintiff testified that taking care of her three-year-old daughter is a "24/7" job for which she does not have any assistance. (TR 32). Plaintiff testified that she lost her driver's license after getting into a car accident. (TR 14-15). Plaintiff testified that she did not know why the charge said "drug trafficking" because the medication in her car at the time of the accident was prescribed to her. (TR 14-15). Plaintiff also testified that her license is now restricted. (TR 15).

Plaintiff testified that she had past substance abuse problems, her three-year-old had tested positive for cocaine when she was born, and that Plaintiff underwent treatment at that time. (TR 15-16). Plaintiff testified that she has not used cocaine since that daughter was born, almost four years before the hearing. Plaintiff testified that she "occasionally" smokes pot but not everyday; she later testified that she smokes pot about once every two months. (TR 16, 20).

Medical expert Dr. Walter Miller testified as to Plaintiff's physical limitations and noted that despite Plaintiff's "complaints of various things, there's not a whole lot documented." (TR 34). The medical expert testified that Plaintiff's conditions did not meet or equal an impairment in the Listings and that she would be physically capable of performing light work. (TR 35-36).

The Vocational Expert (VE) testified that Plaintiff's past work as a fast foods worker is classified in the Dictionary of Occupational Titles (DOT) as light in exertion, unskilled, with an SVP of two. (TR 37). The VE testified that an individual limited to simple, unskilled, light work could perform Plaintiff's past work in fast food. (TR 37-38). The ALJ asked the VE to consider the same individual, with an additional limitation on public work, due to "explosive problems" such as anger and having no more than superficial contact with supervisors and co-employees. (TR 38). The VE testified that such an individual would not be able to perform the fast-food worker position at the

3

counter but could work in the grill area. (TR 38). The VE testified that such an individual could also work as a marker in retail (light and unskilled with 155,600 positions in Michigan), a cleaner housekeeper (light and unskilled with 21,740 positions in Michigan), and stock checker/stock clerk for apparel in retail (55,590 positions). (TR 36, 38-39).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through June 30, 2006, had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date, and suffers from back pain, asthma, seizure disorder, polysubstance abuse, anger, depression and anxiety, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 52). The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of simple, unskilled, light exertion work. (TR 54-55). The ALJ found that Plaintiff is able to perform her past relevant work and is able to perform a significant number of jobs in the economy and therefore she is not suffering from a disability under the Social Security Act. (TR 59-60).

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step sequential analysis set forth in 20 C.F.R. sections 404.1520(a)-(g), 416.920(a)-(g). Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence, the ALJ did not properly weigh the opinions of the treating physicians, the ALJ's RFC is not supported by substantial evidence, the resulting hypothetical question to the VE was deficient and the VE's testimony did not comply with SSR 00-4p, and the ALJ "improperly badgered" Plaintiff and attempted to "administer psychiatric advice." (Docket no. 13 p. iii).

    **B.**    **Discussion and Analysis:**

**1.**    **Whether The ALJ's Credibility Determination Is Supported By Substantial Evidence**

Plaintiff argues that the ALJ erred in his credibility determination and improperly equated Plaintiff's daily activities with the ability to perform work activities. "[A]n ALJ's findings based

5

on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Both the ALJ's decision and a review of the record shows that the ALJ considered both the objective medical evidence in the record and considered the remainder of the record as required by the Regulations, to determine the credibility of the severity of Plaintiff's complaints of pain and other symptoms and limitations. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ gave specific reasons for determining that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible. SSR 96-7p; (TR 55-59). As set forth above, the ALJ fully considered Plaintiff's symptoms with the objective medical evidence of record, including Plaintiff's history of relatively normal x-rays and MRIs. (TR 57-58). On January 31, 2008 Nick Reina, M.D., reported that a recent x-ray of Plaintiff's cervical spine was normal and an MRI of the lumbar spine was normal. (TR 316, 317-18). Dr. Reina reported that he reviewed the x-rays himself and "they are within normal limits." (TR 316).

The ALJ correctly noted the congenital anomaly of having eleven thoracic and six lumbar vertebrae, yet abnormal clinical findings "have generally been limited to tenderness and decreased range of motion." (TR 58-57). Dr. Reina noted that a lumbar spine x-ray of March 2006 showed a "possible sixth vertebra" and a "thoracic spine with possible eleven vertebral bodies." (TR 241-43, 319, 321).

In April 2007 consultative evaluator R. Scott Lazzara, M.D., examined Plaintiff and diagnosed chronic back pain which appeared to be myofascial and seizure disorder with no evidence of focal neurological deficits otherwise. (TR 285-89). On examination, Dr. Lazzara reported

tenderness in the lower lumbar spine but full ranges of motion in the spine. (TR 286-87). He found no evidence of myopathy or power loss and Plaintiff's gate was stable.

Despite Plaintiff's argument to the contrary, the ALJ is directed to consider Plaintiff's activities of daily living, among other factors, in considering the severity of Plaintiff's pain and symptoms and the ALJ properly did so. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Plaintiff had no limitations in personal care or hygiene. Plaintiff also reported that she watches three children, including a special needs child which Plaintiff describes as being "24/7". (TR 12-13, 32). The ALJ also noted that although Plaintiff's work activity did not constitute substantial gainful activity pursuant to the regulations, it did indicate that Plaintiff's daily activities were "at least at times, . . . somewhat greater than the claimant has generally reported." (TR 58). The record shows that Plaintiff engaged in some part-time employment, to which she testified at the hearing. (TR 12-13).

The record shows that Plaintiff consistently reported a wide range of daily activities. On May 19, 2007, examiner Christian R. Barrett, Ed.D., licensed psychologist, diagnosed Plaintiff with depressive disorder and adjustment disorder with mixed anxiety and depressed mood and assigned a GAF of 60. (TR 292-96). Dr. Barrett noted Plaintiff's report that she is "able to perform all household chores including cooking, cleaning, shopping, and laundry" yet needed "frequent rest periods because of her back pain." (TR 293). Consistent with the ALJ's findings, Dr. Barrett also noted that Plaintiff reported playing with her children and going to the park, watching television and getting together with friends to shop or talk. (TR 293). Plaintiff had driven to the evaluation and brought two of her children. (TR 293).

The ALJ considered Plaintiff's treatment and medication. The ALJ pointed out that Plaintiff was only partially compliant with her medications and treatments, as reported by Mario R. Lanni,

M.D., in December 2006. (TR 56, 355). In February 2007 Dr. Lanni reported that Plaintiff's "attendance and compliance with treatment reccomendations (sic) continues to vary drastically from week to week." (TR 356). The record shows that Plaintiff also reported that her medication is helpful or at least partially beneficial. (TR 292). The records show that Plaintiff denied having side effects from medication, including October and December 2006 and February 2007 records from Dr. Lanni and Dr. Barrett's May 19, 2007 evaluation. (TR 56, 292, 354-55).

The ALJ found that Plaintiff was "not a credible witness" and pointed out specific inconsistencies in the record and Plaintiff's testimony. (TR 54, 58). On April 9, 2007 Dr. Lazzara noted that Plaintiff denied any problems sitting and reported that she could stand about ten minutes, walk about 100 yards and "occasionally" lift thirty pounds. (TR 56, 285). Little more than one month later, on May 19, 2007, Dr. Barrett noted Plaintiff's report that she can sit for twenty minutes, stand for five to ten minutes and lift no more than five pounds, with an increase in pain if she exceeds these limitations. (TR 58, 292). The ALJ also noted Plaintiff's inconsistent reports regarding whether she has a seizure disorder. (TR 58). The ALJ cited records relating to Plaintiff's prescriptions which noted that Plaintiff denied a having a history of a seizure disorder. (TR 56, 58, 353). Dr. Barrett noted that Plaintiff did not mention her seizure disorder when discussing her symptoms and conditions during the evaluation. (TR 292).

The ALJ also pointed out that Plaintiff's report of whether she had numbness and tingling was inconsistent between examinations. (TR 58, 285, 320). While the varying of symptoms between examinations is not dispositive of credibility, the ALJ considered the numbness in tingling in conjunction with all of the evidence of record and it was not the sole basis for the ALJ's credibility determination. The ALJ properly explained his credibility determination which is based on a variety of factors and it is supported by substantial evidence in the record.

**2.     Whether The ALJ's RFC is Supported By Substantial Evidence And Whether The ALJ Properly Considered the Opinions Of The Treating Physicians**

Substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC for a range of light work further limited to simple, unskilled work, standing and/or walking for six hours, sitting for six hours and unlimited in the ability to push and pull[1]. (TR 55). As noted above, the ALJ did not find Plaintiff's allegations of disabling pain and symptoms credible. Plaintiff engaged in a wide range of daily activities. The record shows that in April 2007 Plaintiff had denied problems with sitting and reported that she could occasionally lift thirty pounds. (TR 285). The RFC is more restrictive with respect to sitting and lifting and/or carrying than Plaintiff's report to Dr. Lazzara. (TR 285). The ALJ also notes that the RFC is consistent with the independent medical examiner Dr. Miller, who testified that Plaintiff can perform light work and did not assign greater limitations. (TR 59, 35-36). Plaintiff cites the record and argues that the medical expert did not mention Plaintiff's fibromyalgia or consider the combinations of impairments and pain. Plaintiff argues that Dr. Garcia and Dr. Reina's records "indicate" fibromyalgia. (Docket no. 13 p. 14). The hearing transcript shows that Dr. Miller had considered Plaintiff's medical record, including the history of a diagnosis of fibromyalgia and back pain. (TR 34-36).

Of the records to which Plaintiff cites, in December 2006 Jun Garcia, M.D., reported that he "suspect[s]" fibromyalgia and identified only "possible fibromyalgia." (TR 247). In December 2006 and March 2007, Dr. Reina noted that he was seeing Plaintiff for "recheck regarding fibromyalgia" yet there are no objective clinical findings regarding the same and it is not clear that

---

[1] "Light work involves lifting no more than 20 pounds at time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls." 20 C.F.R. § 404.1567(b)

this is a diagnosis of fibromyalgia. (TR 321-23). On December 19, 2006 Dr. Reina reported that his "chart demonstrates normal tests including bone scan" and that on examination Plaintiff was "diffusely tender in the back" yet "paraspinal tone and muscle tones" remained "soft throughout despite the exam." (TR 322). In January 2008 Dr. Garcia noted under "Assessment/Plan" "[c]hronic narcotic use secondary to fibromyalgia?" (TR 363). He reported in the "subjective" section of his report that Plaintiff "has history of fibromyalgia and chronic back pain," again without reference to related clinical findings. (TR 363).

The ALJ also relied on the report of treating physician Dr. Reina who stated that he "would allow for light duty restrictions despite complaints of pain." (TR 322). While Plaintiff is correct that the ALJ cannot assume that Dr. Reina knows the definition of "light" work as set forth in the Regulations, Dr. Reina's opinion is not inconsistent with the ALJ's finding that Plaintiff has the ability to do light work. SSR 96-5p at *5, 1996 WL 374183 ("Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms."). Dr. Reina did not set forth restrictions more severe than the ALJ's RFC and Dr. Reina's opinion stated that he wanted to "encourage her [Plaintiff] to do activity as this would be the best way to prolong disability as opposed to promoting disability." (TR 322).

Plaintiff also argues that the ALJ's limitation to "simple, unskilled work" is not sufficient to address Plaintiff's mental limitations. At step two of the sequential evaluation, the ALJ properly considered Plaintiff's mental impairments. The ALJ measured the severity of the mental disorders in terms of limitations in four functional areas, known as the "B" criteria, by determining the frequency and intensity of the deficits. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ found that Plaintiff has mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence or pace and had experienced no episodes of

decompensation. (TR 54). The ALJ gave reasons and cited to the record for each of his findings in the functional areas. 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

The ALJ cited Plaintiff's initiation and participation in a range of activities of daily living, including care for herself and her children and her social functioning, which included relationships with friends and family, and shopping and talking with friends. (TR 54). The record shows that Plaintiff's interactions at evaluations and examinations was appropriate and cooperative. (TR 271, 293, 296). Dr. Barrett noted Plaintiff's report that she generally gets along with family and neighbors, she had a good relationship with fellow employees and supervisors and she has two close friends. Dr. Barrett noted that her "[r]apport with the examiner was satisfactory." (TR 293). Dr. Valdes reported that Plaintiff was "not significantly limited" in any areas of social interaction except for a moderate limitation in the "ability to accept instructions and respond appropriately to criticism from supervisors." (TR 383).

The ALJ found that Plaintiff has moderate limitations in concentration, persistence or pace. The ALJ noted Plaintiff's statements that she sometimes needs reminders and has problems with her memory, completing tasks, understanding and following instructions and concentration. (TR 54). Plaintiff argues that the ALJ's "B" criteria findings are not severe enough and that the ALJ "attempted to hand pick a few insignificant snippets to support his decision while ignoring the vast adverse mental evidence as a whole" and that the ALJ makes no mention of any treating source opinions which are allegedly in conflict with the ALJ's decision.

Under 20 C.F.R. sections 404.1527(d)(2) and 416.927(d)(2) the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The ALJ is required to give the reasons for the weight he assigned to the treating

11

physician's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ's decision cites the range of treatment records and providers and the ALJ concluded that Plaintiff had limitations in all functional areas, including moderate limitations in maintaining concentration, persistence or pace.

The ALJ specifically addressed Dr. Valdes's opinion that Plaintiff was not significantly limited in carrying out short and simple instructions and five of six areas of social interaction and explained that the opinions were consistent with the record, including Dr. Barrett's assessment. (TR 59). The ALJ also cited records from Plaintiff's treatment at Blue Water Mental Health Clinic, which began in July 2006. (TR 56). Despite Plaintiff's argument that the records from Blue Water showed a "marked" impairment in the ability to concentrate, the treatment records show that this impairment was more often reported as "moderate."[2]

In July 2006 clinical psychologist Elizabeth Shaw-Draves, MA, LLP, found that Plaintiff's immediate and remote memory were intact. (TR 270). In October 2006 she opined that Plaintiff had moderate impairments in the ability to concentrate. (TR 277). Dr. Barrett found that Plaintiff had mild deficits in memory and concentration during her assessment. In May 2007 state agency psychiatric specialist Sheila C. Williams-White diagnosed adjustment disorder with mixed anxiety and depressed mood and depressive disorder and found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (TR 298-311).

---

[2] Plaintiff states in her brief that "Even the finding of 'moderate' limitation with regard to concentration, persistence or pace conflicts with *all professional reports, each of which expressly indicate 'marked'* impairment in concentration." (Docket no. 13, p. 13, emphasis added). Plaintiff cites TR 276, 342, 334 and 382 in support of this statement. Three of these records are from Blue Water Mental Health Clinic. Two of the three Blue Water records cited by Plaintiff (TR 276, 342) indicate "moderate" *not* "marked" impairments in "ability to concentrate" and, in fact, those two records indicate no "marked" impairments in any of the functioning categories. (TR 342, 276). A "moderate" impairment is not inconsistent with the ALJ's finding in this area. (*See also* TR 277, 346).

An examination of the record and the ALJ's decision shows that the ALJ properly considered all of the evidence of record and explained the weight given to treating physicians' opinions, including Dr. Valdes's opinions which was adopted in part. (TR 59). The ALJ's findings with respect to the "B" criteria are supported by substantial evidence in the record.

Plaintiff argues that the ALJ's RFC limiting Plaintiff to simple, unskilled work does not sufficiently account for "moderate" limitations in concentration, persistence or pace. (Docket no. 13, p. 8-11, 9). In *Alhin v. Comm'r of Soc. Sec.,* which Plaintiff cites to support her argument, the ALJ made a specific finding that the claimant's moderate limitations in concentration, persistence or pace would result in the "failure to complete tasks in a timely manner" yet the ALJ's hypothetical question to the VE did not contain this resultant limitation. *See Alhin v. Comm'r of Soc. Sec.*, 2008 WL 2743954 (E.D. Mich. July 11, 2008) ("resulting in failure to complete tasks in a timely manner").

On the contrary, in the instant case, the ALJ made no such finding and his decision further described Plaintiff's moderate limitations in concentration, persistence or pace by stating that Plaintiff was able to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in simple and unskilled, not detailed or complex, work settings. (TR 54). The ALJ made a specific finding, supported by substantial evidence, that Plaintiff was able to concentrate sufficiently long to complete the tasks of unskilled work.

As the ALJ pointed out, Dr. Valdes opined in the Mental Residual Functional Capacity Assessment dated April 3, 2008, that Plaintiff is "not significantly limited" in the "ability to carry

13

out short and simple instructions."[3] (TR 382). On the Assessment, "Not Significantly Limited" is defined as the "ability to function may be restricted but is not precluded." (TR 382). Dr. Valdes found that Plaintiff's ability to carry out instructions was increasingly limited as the level of detail in the instructions increased. (TR 382-83). He opined that Plaintiff would be moderately limited in carrying out "moderately detailed instructions" and markedly limited in carrying out detailed instructions. (TR 383).

The month prior, in March 2008, Dr. Valdes reported that Plaintiff's thought process appeared logical and goal directed, insight and judgment were "likely average," Plaintiff "appears competent" and he noted Plaintiff's report that she "is beginning part-time employment at McDonalds (sic) which she is looking forward to." (TR 385). On April 10, 2008 the doctor noted Plaintiff's report that it had been difficult for her to "get to work and get her children to day care" due to the recent loss of her driver's license as the result of being in a car accident and "concerns of possible substance abuse or drug trafficking." (TR 379). The doctor's report of Plaintiff's insight, thought process and judgment were consistent with the March reports and the doctor again noted that Plaintiff "appears competent." (TR 379).

The ALJ's RFC was limited to unskilled work. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple duties requiring little or no judgment and the term is consistent with the ALJ's findings in this area. 20 C.F.R. § 404.1568(a) (2008). The ALJ's limitation to the defined "unskilled" work addresses the performance of simple duties require little or no judgment and is consistent with the ALJ's findings with respect to Plaintiff's "B" criteria,

---

[3] The ALJ incorrectly attributed this statement and form to Dr. Reina, another treating physician. (TR 57). The statement appears on Dr. Valdes's form of April 2008 in the same exhibit designated by the ALJ and any error in the attribution of the statement is harmless.

14

unlike a hypothetical question which presents only the ambiguous limitation to "simple", "routine" and "repetitive," without further development. *See Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 846 (E.D. Mich. 2007); *cf. Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (The ALJ adequately characterized Plaintiff's mental impairments in the hypothetical question to the VE, despite not using the wording indicated in the PRT.).  The ALJ's RFC is supported by substantial evidence.

### 3. Whether the ALJ's Findings At Steps Four and Five Were Supported By Substantial Evidence

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004).  The ALJ's RFC contains the limitations the ALJ found credible and supported by the record and the RFC is supported by substantial evidence in the record.  The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would be capable of performing Plaintiff's prior work.  (TR 37-38).  The ALJ then further limited the hypothetical question beyond the RFC to jobs restricting work with the public and having only superficial contact with supervisors and co-workers.  The VE further testified at step five that there are jobs available for an individual with these limitations, which the VE cited in detail. (TR 38-39).  The ALJ properly relied on the VE's testimony to find that Plaintiff can perform her past relevant work and a significant numbers of jobs in the economy.  The ALJ's decisions at steps four and five are based on substantial evidence.

Plaintiff argues that the ALJ failed to comply with SSR 00-4p. SSR 00-4p requires the following:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704. At the hearing, the VE was first duly sworn, then the ALJ asked the VE to confirm that he was "going to testify in accordance with the information contained in the Dictionary of Occupational Titles, Selected Characteristics of Occupations" and "[i]f there is a difference between your testimony and the information in those sources, you're going to let us know, correct?" To which the VE testified, "Correct." (TR 36).

Plaintiff cites the unpublished *Harris v. Astrue*, 2008 WL 410577 (N.D. Ind. Feb. 11, 2008), for the premise that questioning the VE prior to giving testimony does not comply with the technical requirements of SSR 00-4p. That is an unpublished district court case from the Seventh Circuit and the Court does not find it binding. A later, published case from the same circuit addresses Plaintiff's cited case, declines to follow it and classifies it as "an unpublished district court case to support [plaintiff's] argument that posing a hypothetical question asking a VE to identify discrepancies between her expert opinion and the DOT prior to her testimony is legally insufficient." *Harris v. Astrue*, 646 F.Supp. 2d 979, 995 (N.D. Ill. 2009)[4]. The published *Harris* decision held that "while recognizing an affirmative duty to inquire into possible discrepancies between a VE's testimony and the DOT, the Seventh Circuit has not established a singular method by which ALJs must elicit

---

[4] The Court notes that these are two different cases with different named plaintiffs.

16

potential conflicts. Therefore, the ALJ satisfied this duty by asking the VE at the onset to describe her findings and to note where she differs from the DOT."

Neither party has cited to law from this circuit in support of its position. The Court finds well-reasoned this district's decision on the issue in *Fleeks v. Commissioner of Social Security*. *See Fleeks v. Comm's of Soc. Sec.*, 2009 WL 2143768 (E.D. Mich. 2009). In this instance, the ALJ made the inquiry required by SSR 00-4p, albeit before the VE's testimony. No inconsistencies were identified by the VE. Plaintiff has not alleged any inconsistencies between the VE's testimony and the DOT, but merely requests "reversal" because the ALJ asked the VE prior to testifying to identify any inconsistencies. The case does not require remand on this basis.

### 4.     Whether The ALJ Exhibited Bias At The Hearing

Finally, Plaintiff argues that the ALJ "improperly badgered" Plaintiff as a witness and "then attempted to administer psychiatric advice." (Docket no. 13 p. 18). Plaintiff argues that the "ALJ became shockingly argumentative without provocation, and launched into sermon-like tirades twice while questioning Ms. Jackson." (Docket no. 13 p. 18). Plaintiff argues that this particular ALJ wrote an article which Plaintiff characterizes as expressing a "highly critical personal viewpoint towards younger claimants and mental impairments" and argues that "it is clear that Ms. Jackson had no chance for a fair adjudication." (Docket no. 13 p. 19).

Plaintiff's argument, in substance, alleges bias by the ALJ. Plaintiff confirms this in her Reply brief. (Docket no. 18). An examination of the record indicates that Plaintiff's claim of bias is not properly before the Court and, in any event, there is substantial evidence in the record to support the Commissioner's denial of benefits. "The Social Security Act gives those claiming disability benefits a right to a hearing in which witnesses may testify and evidence may be received."

17

*Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). "Although the hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair." *Id*.

> The regulations provide:
>
> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. . . . If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

20 C.F.R. §§ 404.940, 416.1440; *see also Ventura*, 55 F.3d at 902 ("The claimant must bring any objections to the attention of the ALJ and the ALJ shall decide whether to continue the hearing or withdraw.").

The regulations require that the issue of bias be raised at the "earliest opportunity." 20 C.F.R. §§ 404.940, 416.1440; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004) (The Pronti parties alleged general bias and did not have all of the evidence necessary to raise the bias issue prior to the appeals council and district court reviews. Therefore, the court found that plaintiffs raised the issue at the earliest opportunity.). At the hearing, neither Plaintiff nor her representative objected or alleged bias relating to her claim and the questioning and statements by the ALJ. A review of the transcript shows that neither Plaintiff nor her representative objected to the ALJ's actions during the hearing.

Plaintiff's allegations rely on evidence from the May 6, 2008 hearing transcript, therefore the earliest opportunity for Plaintiff to object would have been during that hearing. (TR 6-43). The Court does not find an objection in the hearing transcript. The Court also notes that Plaintiff did not raise the issue of bias to the Appeals Council. (TR 5, 196-97). For these reasons, the Court should

find that Plaintiff failed to exhaust his administrative remedies with respect to this issue.  Therefore, the Court is precluded from reviewing the issue of the ALJ's bias.

Even if the Court were to consider Plaintiff's allegations of bias, the Court finds that there is no evidence that the ALJ "did not function in a judicial capacity, or that he entertained preconceived notions . . . in this particular case." *Parchman v. U.S. Dep't of Agriculture*, 852 F.2d 858, 866 (6th Cir. 1988).  Plaintiff has not met her burden of establishing that the ALJ was biased. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004).  As set forth above, the ALJ's RFC is supported by substantial evidence and the Court does not find that the ALJ "substituted the psychiatrists' opinions with that of his own." (Docket no. 13 p. 19).  If the Court considers this issue, the Court should find that the ALJ did not exhibit bias at the hearing or in making his determination.

## VI.     CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'" *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002).  The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise.  Plaintiff's Motion for Summary Judgment (docket nos. 13, 18) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 15) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes

a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 24, 2011        s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 24, 2011        s/ Lisa C. Bartlett
                                       Case Manager