UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA M. JACKSON,

    Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,        Case No. 10-10874

    Defendant.                                     HON. AVERN COHN

_____/

## MEMORANDUM AND ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART JACKSON'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING TO THE ADMINISTRATIVE LAW JUDGE FOR FURTHER PROCEEDINGS

### I. INTRODUCTION

This is a Social Security case. Plaintiff Lisa Marie Jackson (Jackson) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying her application for Social Security disability benefits. Jackson claims disability since January 1, 2005, due to depression, anxiety, attention deficit hyperactivity disorder, back problems, seizures, and asthma.

The parties filed cross motions for summary judgment. The motions were referred to a Magistrate Judge (MJ) for a report and recommendation (MJRR). The MJ recommends that Jackson's motion for summary judgment be denied and that the Commissioner's motion for summary judgment be granted. Jackson filed timely objections to the MJRR. For reasons that follow, the Court will reject the MJRR, and remand to the ALJ for further proceedings.

## II. BACKGROUND

### A.

Jackson applied for disability benefits on November 27, 2006, alleging a January 1, 2005, onset of disability. The Social Security Administration (SSA) denied Hall's claim. A hearing was held before an ALJ on May 6, 2008. The MJRR sets forth pertinent background about Jackson as described at the hearing, as follows:

> [Jackson] was 21 years old on the alleged onset date. [Jackson] has an eleventh grade education. [Jackson] testified that at school she had special education for "everything." At the hearing [Jackson] testified that she had been working part-time at McDonald's for about two months, taking orders at the drive-through and the counter. [Jackson] testified that she cannot work more than fifteen hours per week due to back pain and she cannot work a forty hour week due to back pain, anxiety, and getting "very stressed out very fast" and upset. [Jackson] also testified that she cannot continue to work due to her and her daughter's numerous appointments. [Jackson] estimated that she has been fired from approximately twenty-five percent of her jobs, generally for arguing and not being able to get along with her co-workers. [Jackson] also testified that, as an adult, she has hit people including a neighbor, her mother and her boyfriend and she has hit her boyfriend in front of her children more times than she can count.
>
> [Jackson] had a past suicide attempt at age 14 or 15. [She] testified that she was using "16 pills" on her twenty-first birthday. [Jackson] has undergone mental health treatment including medication. The ALJ pointed out Plaintiff's historical documentation of fibromyalgia, noting that it was "mostly" back pain and Plaintiff denied having problems with her hands, legs and knees. Plaintiff testified that the last time she had a seizure was three years prior to the hearing and at the time of the hearing she was not taking seizure medication.
>
> Plaintiff also testified that she takes care of her three children, including a special needs child and a five month old. Plaintiff attends IEP meetings for her three-year-old. Plaintiff testified that taking care of her three-year-old daughter is a "24/7" job for which she does not have any assistance. Plaintiff testified that she lost her driver's license after getting into a car accident. Plaintiff testified that she did not know why the charge said "drug trafficking" because the medication in her car at the time of the accident was prescribed to her. Plaintiff also testified that her license is now restricted.

> Plaintiff testified that she had past substance abuse problems, her three-year-old had tested positive for cocaine when she was born, and that Plaintiff underwent treatment at that time. Plaintiff testified that she has not used cocaine since that daughter was born, almost four years before the hearing. Plaintiff testified that she "occasionally" smokes pot but not everyday; she later testified that she smokes pot about once every two months.

(Doc. 20).

A vocational expert (VE) also testified at the hearing. In response to a hypothetical from the ALJ, which asked whether someone limited to simple, unskilled, light work be able to perform Jackson's past work as a fast food worker, the VE answered yes. When asked by the ALJ to next consider the same individual, with an additional limitation on public work, due to "explosive problems" such as anger and having no more than superficial contact with supervisors and co-employees, the VE responded that such an individual would not be able to perform the fast-food worker position at the counter but could work in the grill area. The VE testified that such an individual could also work as a marker in retail (light and unskilled with 155,600 positions in Michigan), a cleaner housekeeper (light and unskilled with 21,740 positions in Michigan), and stock checker/stock clerk for apparel in retail (55,590 positions).

The ALJ then asked the VE to add another limitation which would prevent the individual from dealing with people "on a sustained basis," meaning that "if she's working full-time she'd end up blowing up at the people, and hitting them or throwing stuff at them eventually." The VE replied that this limitation would eliminate the individual from qualifying for any job. Finally, the ALJ added the limitation in which an individual would "intermittently decompensate in a work setting so that person would [sic] have a meltdown and would [sic] cause a scene," to which the VE again replied

that the individual would not qualify for any available job due to the fact that the "condition would cause her to miss work twice a month," which "would keep her out of all employment."

**B.**

On June 26, 2008, the ALJ issued a decision denying benefits, finding that Jackson was not disabled under the Social Security Act and concluding that Jackson had the residual functional capacity to perform a limited range of simple, unskilled, light exertion work. The ALJ further found that Jackson to have an RFC to perform a range of light work, as defined in 20 C.F.R. 404.1567(b). He found Jackson able to perform her past relevant work and able to perform a significant number of jobs in the economy thus he held that she was not suffering from a disability under the Social Security Act. The Appeals Council (AC) declined to review the ALJ's decision.

Jackson then brought this action for judicial review, arguing that the ALJ's decision was not supported by substantial evidence because 1) the ALJ failed to properly assess Jackson's credibility as to her limitations, 2) the ALJ erred by limiting Jackson to simple, unskilled work, and by not properly considering her treating physician's opinion, 3) the ALJ's hypothetical question to the VE was not an accurate portrayal of her limitations, and 4) the ALJ exhibited bias at the hearing. The MJRR rejected Jackson's assertions and found that, overall, there was substantial evidence in the record to support the ALJ's decision.

Jackson now objects to the MJRR on the same grounds.

### III. STANDARD OF REVIEW

Judicial review of a Social Security disability benefits application is limited to

4

determining whether the "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." Consol. Edison Co. v. NLRB, 305 U.S. 197, 299 (1938). The substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference with the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant finds objectionable are reviewed de novo. 28 U.S.C. § 636(b)(1)(c); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV. DISCUSSION

### A. Adverse Credibility Assessment

First, Jackson says that the ALJ's adverse credibility determination as to the extent of her mental impairments is not supported by substantial evidence. Particularly, she says that the ALJ did not adequately state on the record why he did not give full weight to Jackson's stated mental impairments. Further, she says that the ALJ improperly considered her daily activities.

An ALJ's findings regarding a claimant's credibility "are to be accorded great

5

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). Any credibility assessment made by an ALJ must be supported by substantial evidence in the record. Id. However, "there is nothing patently erroneous in the ALJs decision to rely on her own reasonable assessment of the record over the claimant's personal testimony." White v. Comm'r of Soc. Sec., 572 F. 3d 272, 287 (6th Cir. 2009). Finally, "[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments." Kidd v. Comm'r of Soc. Sec., 283 Fed. App'x 336, 342 (6th Cir. 2008) (quoting Walters, 127 F.3d at 532).

Here, the ALJ adequately stated his findings. Generally, the ALJ found Jackson's reported symptoms and limitations to be inconsistent and unpersuasive. In support of this conclusion, the ALJ described that in one examination Jackson reported being able to sit for 20 minutes. However, in another, she denied suffering from any sitting problems. Jackson also reported having numbness and tingling in one examination, but in another denied having numbing or tingling. She reported suffering from a seizure disorder, but in later examinations either denied it or made no mention of it. Finally, the ALJ describes that during one examination Jackson stated that she can occasionally lift 30 pounds, but one month later states that she can lift 5 pounds.

As to Jackson's daily activities, the ALJ properly considered and relied on them. Particularly, the ALJ described that Jackson is able to initiate and participate in activities such as cleaning, doing laundry, caring for pets, shopping, as well as activities related to personal hygiene. The ALJ also noted that Jackson is able to take care of her young

daughters which includes making their lunch and participating in activities with them.

Based on the above, the Court agrees that there is substantial evidence to support the ALJ's adverse credibility finding, especially in light of the deference given to ALJ's related to these determinations. Thus, Jackson's objection on this issue is overruled.

### B. Bias

Next, Jackson argues that the ALJ was bias and should have been disqualified because he had "preconceived notions" about Jackson evidenced by the way he treated her during the hearing, i.e., acting as an "amateur doctor," and by a law review article authored by the ALJ, which examines the current social security disability system and proposes solutions to improve it. See Paul Armstrong, Toward a Unified and Reciprocal Disability System, J. Nat'l Ass'n Admin. L. Judges 25 (2005). The argument lacks merit.

As the MJRR states, the regulations require that Jackson raise any objections related to the ALJ's potential bias at the earliest opportunity so as to determine whether the ALJ shall continue with the hearing or withdraw. See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) ("The claimant must bring any objections to the attention of the ALJ and the ALJ shall decide whether to continue the hearing or withdraw."); Pronti v. Barnhart, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004) (district court found that parties raised the objection at the appropriate "earliest opportunity" because they did not have evidence to raise the appeal prior to the appeals council and district court reviews).

Here, Jackson did not raise the bias objection to the AC. Thus, it is not properly raised here. Moreover, even if Jackson had raised it below, in order to evaluate a bias claim the Court "must begin with the 'presumption that policymakers with

7

decisionmaking power exercise their power with honesty and integrity.'" Collier v. Comm'r of Soc. Sec., 108 Fed. Appx. 358, 364 (6th Cir. 2004) (quoting Navistar Int'l. Transportation Corp. v. EPA, 941 F.2d 1339, 1360 (6th Cir.1991)). "The burden of overcoming the presumption of impartiality rests on the party making the assertion [of bias], and the presumption can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." Id. (citing Schweiker v. McClure, 456 U.S. 188, 196 (1982); Withrow v. Larkin, 421 U.S. 35, 47(1975)) (internal quotation marks omitted). "Stated differently, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." Collier, supra, at 364 (internal citations and quotation marks omitted).

Jackson has not set forth evidence of actual bias or prejudgment on the part of the ALJ. Rather, she asserts that he should have been disqualified because of the style of his questioning at the hearing, and because of a law review article that he authored, unrelated to Jackson, but according to her demonstrating a "highly critical personal viewpoint towards younger claimants and mental impairments." This argument does not persuade the Court that actual bias or prejudgment was present.

Thus, Jackson has not met the burden so as to establish that the ALJ was bias to require his removal from the case. Jackson's objection on this issue is over-ruled.

### C. RFC and Hypotheticals

Lastly, Jackson argues that the ALJ's RFC finding is not supported by substantial evidence. As a result, Jackson says that the ALJ's hypothetical to the VE is flawed because it did not accurately portray her limitations in concentration, persistence, and pace. During oral argument, Jackson's counsel further asserted that the ALJ did not

consider the medical opinion evidence on the record in its entirety and failed to address multiple findings of "marked" impairment by treating physicians, which he says constitutes error. Particularly, Jackson points to the fact that the ALJ seemingly ignores treating physician John Valdez's (Valdez) assessment that Jackson is "markedly limited" in seven out of ten "sustained concentration and persistence" abilities on the "Mental Residual Functional Capacity Assessment."[1] (See Doc. 8-8, p. 72). Instead, Jackson says that the ALJ erroneously relied only on the abilities in which Jackson was assessed as "not significantly limited" or "moderately limited." Finally, Jackson says that the ALJ also ignored a discharge summary by Blue Water Counseling, which assessed Jackson as having "marked impairment" in marriage/relationships, family problems, job/school/performance, and ability to concentrate. (Doc. 8-8, p. 72). Because these assessments were not considered in the ALJ's opinion relating to her RFC assessment, Jackson argues that the RFC is not accurate, as it is not based on substantial evidence. The Court agrees.

An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility. Coldiron v. Comm'r of Soc. Sec., 391 Fed. Appx. 435, 443-44 (6th Cir. 2010) (unpublished) (internal citations omitted). When evaluating medical opinion evidence, "an ALJ must

---

[1] Within the "Sustained Concentration and Persistence" category, Jackson is assessed as markedly limited in: (1) The ability to carry out detailed instructions; (2) The ability to maintain attention and concentration for short periods of time; (3) The ability to maintain attention and concentration for extended periods of time; (4) The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) The ability to work in coordination with, or proximity to others without being distracted by them; (6) The ability to make ordinary work-related decisions; (7) The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. 8-8, p. 72).

9

give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." Id.

As to hypotheticals posed to the VE, they "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Comm'r of Soc. Sec., 30 Fed. App'x 542, 548 (6th Cir. 2002); see also Casey v. Sec'y of HHS, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Finally, an ALJ should ask hypotheticals that include concentration difficulties accurately characterizing a claimant's impairments. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

Relating to Jackson's mental impairments, the ALJ considered Jackson's description of her depression, anxiety, and panic attacks which Jackson reported left her incapable of all work activity. The ALJ also gave "somewhat persuasive" weight to treating physician Valdez's assessment, which describes that Jackson is not

10

significantly limited in her ability carry out short and simple instructions, to interact appropriately with the general public, to ask questions, or to work with and get along with co-workers and supervisors. In addition, the ALJ gave "considerable weight" to an independent medical expert's opinion who found that Jackson was capable of performing light work.

As stated in the recent decision of Karger v. Comm'r of Soc. Sec., 2011 WL 477682 (6th Cir. Feb. 10, 2011), "[t]he Court is cognizant that an ALJ can consider all the medical opinion evidence without directly addressing in his written decision every piece of evidence submitted by a party, but his factual findings as a whole must show that he implicitly resolved such conflicts. Id. at *10 (citing Loral Defense Systems-Akron v. NLRB, 200 F.3d 436, 453 (6th Cir. 1999). "Nevertheless, while a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand. Id. With this basis in mind, the court of appeals in Karger remanded a denial of social security disability benefits back to the ALJ because "the ALJ's opinion [did] not represent the entire record." Id. The court held, "[g]iven that, according to the Court's review of the entire record, at least four medical source opinions found [the claimant] disabled because of her psychological impairments and at least four did not, the ALJ must carefully articulate his resolution of the conflict with contextual awareness of the record evidence." Id. (citing Kester v. Astrue, 2009 WL 275 438, *9 (S.D. Ohio Feb. 3, 2009), for the proposition that an ALJ cannot "pick and choose" only the evidence that supports his position).

Here, the ALJ mentions Valdez's assessment briefly, but gives it "somewhat persuasive" weight and fails to mention the assessments which describe Jackson as markedly impaired. Further, the ALJ fails to mention the Blue Water Counseling discharge summary which also assesses Jackson as markedly impaired in several abilities, including concentration. Finally, the ALJ gives no explanation as to why he did not give fully weight to Valdez as a treating physician of Jackson. Karger, supra; see also Wilson, supra, at 544 ("if the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion"). In sum, the ALJ's opinion does not represent the entire record due to its incomplete analysis and unexplained conflicts of medical opinion evidence, especially as it relates to treating physician Valdez. See Karger, supra.

Moreover, the ALJ's failure to address the marked limitation assessments by Valdez and Blue Water Counseling is particularly harmful due to the fact that the VE testified that further limitations, if accurate, would prevent Jackson from working. See Karger, supra, at *13 ("The [ALJ's] omissions are especially harmful given the VE's testimony that the limitations found by Watts . . . if accurate, would prevent [the claimant] from working").

Accordingly, the ALJ erred on this ground and remand is proper.

### V. CONCLUSION

For the reasons stated above, the Court DECLINES to adopt the MJRR. The

12

Commissioner's motion for summary judgment is DENIED.  Jackson's motion for summary judgment is DENIED in part and GRANTED in part.  Finally, as it relates to Jackson's RFC and hypothetical objections, the Court REMANDS to the ALJ for further consideration and a new opinion consistent with this memorandum and order.

SO ORDERED.

       S/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE

Dated:  July 13, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 13, 2011, by electronic and/or ordinary mail.

       S/Julie Owens
       Case Manager, (313) 234-5160